**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| IHS MARKIT LTD., LANCE UGGLA, THE | : **SECURITIES EXCHANGE ACT OF** |
| LORD BROWNE MADINGLEY, DINYAR S. | : **1934** |
| DEVITRE, RUANN F. ERNST, JACQUES | : |
| ESCULIER, WILLIAM E. FORD, | : **JURY TRIAL DEMANDED** |
| NICOLETTA GIADROSSI, GAY HUEY | : |
| EVANS OBE, ROBERT P. KELLY, | : |
| DEBORAH DOYLE MCWHINNEY, JEAN- | : |
| PAUL L. MONTUPET, DEBORAH ORIDA, | : |
| JAMES A. ROSENTHAL, S&P GLOBAL | : |
| INC., and SAPPHIRE SUBSIDIARY, LTD., | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against IHS Markit Ltd. ("IHS Markit or the "Company") and the members IHS Markit's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between IHS Markit and S&P Global Inc. and its affiliates ("S&P Global").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on January 8, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sapphire Subsidiary, Ltd., a wholly owned subsidiary of S&P Global, will merge with and into IHS Markit with IHS Markit surviving as a wholly owned subsidiary of S&P Global (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each IHS Markit stockholder will receive 0.2838 S&P Global shares (the "Merger Consideration"). After the completion of the Proposed Transaction, HIS Markit shareholders will own 32.25% of the common stock of the combined company and S&P Global shareholders will own 67.75% of the combined company.

3.     As discussed below, Defendants have asked IHS Markit's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC in support of its fairness opinion.

4.     It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to IHS Markit's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because S&P Global is incorporated and headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of IHS Markit stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Lance Uggla has served as a member of the Board since 2003 and is the Chairman of the Board and Chief Executive Officer.

11. Individual Defendant The Lord Browne Madingley has served as a member of the Board since 2018.

12. Individual Defendant Dinyar S. DeVitre has served as a member of the Board since 2012.

13. Individual Defendant Ruann F. Ernst has served as a member of the Board since 2006.

14. Individual Defendant Jacques Esculier has served as a member of the Board since 2020.

15. Individual Defendant William E. Ford has served as a member of the Board since 2010.

16. Individual Defendant Nicoletta Giadrossi has served as a member of the Board since 2018.

17. Individual Defendant Gay Huey Evans OBE has served as a member of the Board since 2020.

18. Individual Defendant Robert P. Kelly has served as a member of the Board since 2012 and as Lead Director since 2014.

19. Individual Defendant Deborah Doyle McWhinney has served as a member of the Board since 2015.

20. Individual Defendant Jean-Paul L. Montupet has served as a member of the Board since 2012.

21. Individual Defendant Deborah Orida has served as a member of the Board since 2019.

22. Individual Defendant James A. Rosenthal has served as a member of the Board since 2013.

23. Defendant IHS Markit a Bermuda exempted company and maintains its principal offices at 4th Floor, Ropemaker Place, 25 Ropemaker Street, London, England, EC2Y 9LY. The Company's stock trades on the New York Stock Exchange under the symbol "INFO."

24. Defendant S&P Global is a New York corporation and maintains its principal offices at 55 Water Street, New York, New York 10041. The Company's stock trades on the New York Stock Exchange under the symbol "SPGI."

25. Defendant Sapphire Subsidiary, Ltd. Is a Bermuda exempted company and a wholly owned subsidiary of S&P Global formed for the sole purpose of effectuating the Proposed Transaction.

26. The defendants identified in paragraphs 10-22 are collectively referred to as the "Individual Defendants" or the "Board."

27. The defendants identified in paragraphs 10-25 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

28. IHS Markit provides critical information, analytics, and solutions for various industries and markets worldwide. The Company's information, analytics, and solutions enhance operational efficiency and offer deep insights for customers in business, finance, and government. Its Financial Services segment offers pricing and reference data, indices, valuation and trading services, trade processing, enterprise software, and managed services to traders, portfolio managers, risk managers, research professionals, and other financial market participants, as well as operations, compliance, and enterprise data managers. The Company's Transportation segment provides authoritative analysis; sales and production forecasts for light vehicles, medium and heavy commercial vehicles, powertrains, components, and technology systems; and predictive analytics and marketing automation software. It also offers comprehensive data on ships, and monthly import and export statistics. The Company's Resources segment provides upstream services, including technical information, analytical tools, and market forecasting and consulting

for the upstream industry; and downstream information, such as market forecasting, midstream market analysis and supply chain data, refining and marketing economics, and oil product pricing information for the chemical, refined products, agriculture, and power industries. It also offers data for manufacturing processes; and capital expenditure, cost, price, production, trade, demand, and capacity industry analysis and forecasts. The Company's Consolidated Markets & Solutions segment provides discovery technologies, research tools, and software-based engineering decision engines; performance and analysis for technology, media, and telecom industries; and economic and risk data, forecast, and analytic tools. It has strategic partnership with QUODD Financial Information Services. The Company was founded in 1959 and is headquartered in London, the United Kingdom.

29. On November 30, 2020, the Company and S&P Global jointly announced the Proposed Transaction:

> NEW YORK and LONDON, Nov. 30, 2020 /PRNewswire/ -- S&P Global (NYSE: SPGI) and IHS Markit (NYSE: INFO) today announced they have entered into a definitive merger agreement to combine in an all-stock transaction which values IHS Markit at an enterprise value of $44 billion, including $4.8 billion of net debt. The transaction brings together two world-class organizations, a unique portfolio of highly complementary assets in attractive markets and cutting-edge innovation and technology capability to accelerate growth and enhance value creation.
>
> Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, each share of IHS Markit common stock will be exchanged for a fixed ratio of 0.2838 shares of S&P Global common stock. Upon completion of the transaction, current S&P Global shareholders will own approximately 67.75% of the combined company on a fully diluted basis, while IHS Markit shareholders will own approximately 32.25%.
>
> S&P Global and IHS Markit's unique and highly complementary assets will leverage cutting-edge innovation and technology capability, including Kensho and the IHS Markit Data Lake, to enhance the customer value proposition and provide the intelligence customers need to make decisions with conviction. Serving a global customer base across financial information and services, ratings, indices, commodities and energy, and transportation and engineering, the pro forma

company will provide differentiated solutions important to the workflows of many of the world's leading companies.

The transaction creates a pro forma company with increased scale, world-class products in core markets and strong joint offerings in high-growth adjacencies, including private assets, small and medium enterprises ("SME"), counterparty risk management, supply chain and trade and alternative data. Combined, the two companies will provide comprehensive solutions across data, platforms, benchmarks and analytics in ESG, climate and energy transition.

Douglas Peterson, President and Chief Executive Officer of S&P Global, will serve as CEO of the combined company. Lance Uggla, Chairman and Chief Executive Officer of IHS Markit, will stay on as a special advisor to the company for one year following closing.

"Through this exciting combination, we are able to better serve our markets and customers by creating new value and insights," said Mr. Peterson. "This merger increases scale while rounding out our combined capabilities, and accelerates and amplifies our ability to deliver customers the essential intelligence needed to make decisions with conviction. We are confident that the strengths of S&P Global and IHS Markit will enable meaningful growth and create attractive value for all stakeholders. We have been impressed by the IHS Markit team and look forward to welcoming the talented IHS Markit employees to S&P Global."

"This transaction is a win for both IHS Markit and S&P Global as we leverage our respective strengths in information, data science, research and benchmarks," said Mr. Uggla. "Our highly complementary products will deliver a broader set of offerings across multiple verticals for the benefit of our customers, employees and shareholders. Our cultures are well aligned, and the combined company will provide greater career opportunities for employees. We look forward to bringing together our teams to realize the potential of this combination."

**Strategic Rationale – Powering the Markets of the Future**

- **Greater scale and business mix**: The transaction creates a combined business with increased scale and world-class products in core market segments. The combined company will have balanced earnings across major industry segments and a resilient portfolio, providing additional financial flexibility to pursue value-creating opportunities.
- **Creates strong offerings in high-growth adjacencies:** The combined company will be differentiated in attractive high-growth adjacencies, including ESG, climate and energy transition, private assets and SME, counterparty risk management, supply chain and trade, and alternative data, which together represent $20 billion of total addressable market, growing at least 10% annually. As part of its ongoing commitment to remain on the cutting edge of technology and innovation, the combined company will continue to deploy well above $1 billion annually on technology.

- **Increased customer value proposition:** The transaction brings together both companies' customer-first cultures and broadens their combined reach across client segments, workflows and use cases. The pro forma organization will serve diverse customer segments across financial services, corporates and governments with differentiated data and intelligence, including the potential to link and create novel insights from new data set combinations. S&P Global and IHS Markit's complementary product portfolios are expected to enable the combined company to serve new and expanded customer use cases in existing and new geographies.
- **Best-in-Class talent:** The combined company will benefit from two best-in-class workforces with deep expertise and strong, complementary cultures focused on serving the global needs of customers. As a single organization, the collective workforce will benefit from expanded opportunities for career development and growth.

**Financial Benefits – Strong Financial Profile and Outlook**

- **Enhanced growth profile:** The pro forma company will have 76% recurring revenue and expects to realize 6.5-8.0% annual organic revenue growth in 2022 and 2023, balanced across major industry segments.
- **Increased profitability:** The combined company will target 200 basis points of annual EBITA margin expansion.
- **Attractive synergy opportunities and earnings accretion:** The transaction is expected to be accretive to earnings by the end of the second full year post-closing. The combined company expects to deliver annual run-rate cost synergies of approximately $480 million, with approximately $390 million of those expected by the end of the second year post-closing, and $350 million in run-rate revenue synergies for an expected total run-rate EBITA impact of approximately $680 million by the end of the fifth full year after closing.
- **Maintains strong balance sheet to pursue further growth:** The combined company is expected to maintain a strong balance sheet and credit profile, with pro forma annual revenue of more than $11.6 billion. S&P Global intends to maintain a prudent and flexible capital structure and will target leverage of 2.0-2.5x EBITA, on an agency-adjusted basis.
- **Enhanced free cash flow generation to support attractive capital return:** The combined company expects to generate annual free cash flow exceeding $5 billion by 2023, with a targeted dividend payout ratio of 20-30% of adjusted diluted EPS and a targeted total capital return of at least 85% of free cash flow between dividends and share repurchases. Both companies expect to maintain their current dividend policies until the close of the transaction.

**Management and Board**

Following closing, the Company will be headquartered in New York with a substantial presence in key global markets across North America, Latin America, EMEA and Asia Pacific.

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the appropriate skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The combined company's Board of Directors will include the current S&P Global Board of Directors and four directors from the IHS Markit Board. Richard Thornburgh, current Chairman of S&P Global, will serve as Chairman of the combined company.

The leadership team will comprise senior leaders from both organizations. Ewout Steenbergen, Executive Vice President and Chief Financial Officer of S&P Global, will serve as Chief Financial Officer of the combined company.

The transition and integration of the combined company will be led by executives from both S&P Global and IHS Markit. The approach to integration planning will draw from the best practices of both companies to ensure continuity for customers, employees and other stakeholders.

**Timing and Approvals**

The transaction is expected to close in the second half of 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, other antitrust and regulatory approvals, and other customary closing conditions. The transaction requires the approval of shareholders of both S&P Global and IHS Markit and is not subject to any financing conditions.

**Advisors**
Goldman, Sachs & Co. LLC is serving as lead financial advisor to S&P Global. Citi, Credit Suisse and HSBC Securities (USA) Inc. are also serving as financial advisors to S&P Global. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to S&P Global. Boston Consulting Group is serving as strategy advisor and KPMG LLP is serving as transaction advisor to S&P Global. Morgan Stanley & Co. LLC is serving as lead financial advisor to IHS Markit. Barclays, Jefferies LLC and J.P. Morgan Securities LLC are also serving as financial advisors to IHS Markit. Davis Polk & Wardwell LLP is serving as legal advisor to IHS Markit. Oliver Wyman is serving as strategy advisor to IHS Markit.

* * *

30. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that IHS Markit's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Registration Statement**

31. On January 8, 2021, IHS Markit and S&P Global jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

32. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "S&P Global Projections") and provided them to the Board and Morgan Stanley by management of both IHS Markit and S&P Global with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

33. For the S&P Global Projections for S&P Global, S&P Global Projections for IHS Markit, and S&P Global Projections for the Combined Company, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2026: Adjusted EBITDA (post-SBC), Adjusted Net Income Attributable to Common Shareholders, Adjusted Diluted EPS, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

34. For the IHS Projections for IHS Markit and IHS Markit Projections for S&P Global, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2026: Adjusted EBITDA (pre-SBC), Adjusted Net Income, Adjusted EPS, Unlevered Free Cash Flow and Adjusted EBITDA (post-SBC), but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

35. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

36. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

37. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

38. With respect to Morgan Stanley's *IHS Markit Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of IHS Markit; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2020 through 2024; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.25% to 2.75%; (iv) the inputs and assumptions underlying the discount rates ranging from 5.63% to 6.%96; and (v) the number of fully diluted outstanding of IHS Markit common stock.

39. With respect to Morgan Stanley's *S&P Global Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of S&P Global; (ii) line items used

to calculate S&P Global's projected unlevered free cash flows for fiscal years 2020 through 2026; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.25% to 2.75%; (iv) the inputs and assumptions underlying the after-tax discount rates ranging from 5.53% to 6.96%; and (v) estimated number of fully diluted outstanding shares of S&P Global as of November 29, 2020.

40. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of IHS Markit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of IHS Markit, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of IHS Markit, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of IHS Markit, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement

at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

51. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 11, 2021

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com
*Attorneys for Plaintiff*